AO 91 (Rev. 11/11) Criminal Complaint

FILED
UNITED STATES DISTRICT COURT
ROSWELL, NEW MEXICO

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

JUL 02 2012

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | CLERK |
| | ) Case No. 12MJ1540 | |
| GARLAN PLUMLEE | ) | |
| | ) | |
| | ) | |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  June 28-29, 2012  in the county of  Eddy  in the
_____ District of  New Mexico , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841 and 813 | Possess with Intent to Distribute a Controlled Substance Analog (Synthetic Marijuana), a Schedule I Controlled Substance |
| 18 U.S.C. 1956 | Conduct a financial transaction with money which constituted the proceeds of drug trafficking, a specified unlawful activity, with the intent to conceal the location, source, and nature of the money |

This criminal complaint is based on these facts:

See Attached Sheet

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Paul Schiller, DEA Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 07/02/2012

_____
*Judge's signature*

City and state:  Roswell, New Mexico

Kea Riggs, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT FOR COMPLAINT ON GARLAN PLUMLEE

I, Paul Schiller, Special Agent with the Drug Enforcement Administration, having been duly sworn, do depose and state the following:

I am a Special Agent with the Drug Enforcement Administration (DEA), United States Department of Justice. I have been a Special Agent with the DEA for approximately two years. As a Special Agent with the DEA, I am a law enforcement officer of the United States within the meaning of Title 18, United States Code (U.S.C.) §2510(7), and am empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 18 U.S.C. § 2516.

My experience as a Special Agent includes, but is not limited to, conducting physical surveillance, interviewing witnesses, writing affidavits for and executing search warrants, working with undercover agents and informants, analysis of materials received in response to the issuance of administrative and federal grand jury subpoenas, analysis of phone toll and financial records, and analysis of data derived from the use of pen registers, trap and traces, and wiretaps.

I am familiar with the facts and circumstances of this investigation as a result of my personal participation in the investigation referred to in this affidavit and information summarized in reports I have reviewed. I have compiled information derived from numerous discussions with experienced law enforcement officers, including Special Agents of the DEA, IRS and other State and Local law enforcement officers.

Based upon the following facts, I believe that probable cause exists to show that Garlan Plumlee did possess with intent to distribute approximately 4,779 packages of a controlled substance analog (synthetic marijuana), in violation of 21 U.S.C. 841 (a) (1) and 813, and did launder money derived from drug trafficking in violation of 18 U.S.C. 1956 (a) (1). Since this affidavit is being submitted for the limited purpose of establishing probable cause, your Affiant has not included each and every known fact regarding the instant investigation. More specifically, your Affiant has set forth only pertinent facts that your Affiant believes are necessary to establish probable cause.

On February 2, 2012, Agent Leos with the Pecos Valley Drug Task Force conducted an investigation into the "Looking Glass" business located at 834 S. Canal in Carlsbad, NM. Agent Leos had received information that the store was allegedly selling synthetic marijuana or "spice." Contact was made with a cooperating source (CS) in reference to having him conduct a controlled buy at this location.

The CS was met and given money for the purchase of evidence/spice. The CS then left to 834 S. Canal. The CS then purchased a "Scooby Snax" which was labeled as aroma therapy. The CS advised that he purchased the spice directly from a Hispanic male likely in his late twenties with black hair, skinny, 5'6" with a long goatee. The CS advised that when he went into the store, he was asked for his identity card. The CS provided it and was allowed to shop. The CS observed approximately 10 kinds of packages to choose from which were being sold as aroma therapy. The CS asked if there was any spice, and was told by the seller that spice was illegal and that they sold aroma therapy. The CS was then told that the Scooby Snax was a very popular item. The CS in turn purchased the 1.5 gram item for twenty dollars.

Agent Leos then weighed the suspected synthetic marijuana. The item weighed 1.5 grams on uncertified scales. The synthetic marijuana was logged in as evidence and was sent to the lab for testing. The owner of the Looking Glass is Garlan Plumlee.

On June 27, 2012 Agent R. Garcia of the Lea County Drug Task Force went into the Looking Glass store at approximately 10:30 a.m. and purchased three different substances believed to be synthetic marijuana. The names on the packaging of the items were "Scooby Snax," "Diablo," and "Knockout." The purchase price for the three items was $60.00. Agent Garcia was asked to provide identification prior to entering the business. He was then assisted by an employee and purchased the suspected synthetic marijuana directly from a Hispanic male likely in his late twenties with black hair and a black beard. Agent Garcia told the male that he wanted to purchase "Scooby Snax." The male then directed Garcia to a glass counter top where Agent Garcia observed several types of "herbal" packaging taped to the counter. Agent Garcia then purchased a Scooby Snax and a Diablo package. In reference to the "Diablo" package the male employee then told Agent Garcia "we advise you eat something first and not go

anywhere." The clerk then said the total for the items would be $60.00. The employee was given the money and then went to a back counter and retrieved a small jar type container which was labeled as "Knock Out." He then gave it to Agent Garcia and added that "the people really like this." He stated that this time it would be free of charge. Agent Garcia then left the Looking Glass. Upon him returning to the PVDTF the Scooby Snax was packaged in the same consistency and appearance as the Scooby Snax purchased on February 2, 2012.

On June 28, 2012, Pecos Valley Drug Task Force agents obtained and executed a state search warrant for the Looking Glass in Carlsbad, NM. During the search warrant, agents seized 4,779 packages of suspected synthetic marijuana. The spice was packaged in 38 different types of packages, with names such as "Scooby Snax Aroma Therapy," "Zombie Hoe", and "Mr. Bubble." The majority of the packages contained between 1.0 and 1.5 grams of suspected spice in each package. Agents also located 16 firearms in the business.

On June 28, 2012, Agent Leos spoke with Adam Wolf who is a Forensic Scientist at the DPS Hobbs Forensic Laboratory. Wolf who reviewed and processed the Scooby Snax sample sent to him from the February 2, 2012, incident, advised that it did test positive for AM-2201 (1-5-fluoropentyl)-3-(1-naphthoyl), JWH-122 (1-pentyl-3-(4-methyl-1-naphthoyl) indole), and JWH-210 (1-pentyl-3-(4-ethylnaphthoyl)indole). AM-2201, JWH-122, and JWH-210 are analogs of other controlled substances. An analog is considered as a substance that is chemically similar in structure to a Schedule I or II controlled substance, and that has a substance containing a pharmacological effect substantially similar or greater than a Schedule I or II controlled substance or was represented by the seller to have a pharmacological effect substantially similar to or greater than a Schedule I or II controlled substance. AM-2201, JWH-122, and JWH-210 are analogs to the five illegal synthetic drugs listed on Sec. 1308.11 on Schedule I.

On June 29, 2012, Plumlee, the owner of the Looking Glass, went into the Carlsbad National Bank and withdrew a total of $147,000. He withdrew $7,000 from his personal account and $140,000 from his business account. The Carlsbad National Bank gave Plumlee $75,000 in U.S. Currency and a $72,000 cashier's check. During the transaction, Plumlee told a bank employee that his business had been "raided" the previous day.

Based on the above, I believe that there is probable cause to believe that Plumlee was in possession of a controlled substance analog with intent to distribute it and that he conducted a financial transaction with money which was the proceeds of drug trafficking with the intent to hide the location of the money.

*[signature: Paul Schiller]*

Paul Schiller
Special Agent
Drug Enforcement Administration

SWORN AND SUBSCRIBED to before me on this 2nd day of July, 2012.

*[signature: Kea W. Riggs]*

Kea W. Riggs
United States Magistrate Judge